**JS-6**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01926-DOC-ADS Date: September 8, 2026

Title: Michael Swaine v. XPO Logistics Freight, Inc. et al.

---

PRESENT: THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS): ORDER REMANDING CASE TO STATE COURT SUA SPONTE**

On the Court's own motion, the Court hereby **REMANDS** this case to the Superior Court of California, County of Orange.

## I. Background

This is an employment action. Plaintiff Michael Swaine ("Plaintiff") worked as a truck driver at XPO Logistics and Freight, Inc.'s business, from February 2022 until April 2026. Complaint ("Compl.") (Dkt. 1-1) ¶¶ 6, 12.

In August 2025, Plaintiff's two-year-old-daughter died by drowning in a pool. *Id.* ¶ 8. Thereafter, Plaintiff was diagnosed with depression and Post-Traumatic Stress Disorder (PTSD) and began a disability leave of absence in September 2025. *Id.* ¶ 9.

On March 26, 2026, Defendant XPO Logistics and Freight, Inc. ("Defendant") sent a letter to Plaintiff explaining that Plaintiff's leave under the Family and Medical Leave Act (FMLA) was exhausted on December 10, 2025, so Plaintiff had three options to retain employment with Defendant: "(1) request additional time off work as a reasonable accommodation by April 10, 2026; (2) return to work full duty with no restrictions by April 2, 2026, or (3) apply for other positions within Defendant." *Id.* ¶ 10.

On April 7, 2026, Plaintiff elected the first option by submitting a Reasonable Accommodation Request form signed by his doctor to extend his disability leave of absence. *Id.* ¶ 11. On April 17, 2026, Plaintiff was terminated by Defendant, effective immediately. *Id.* ¶ 12. Plaintiff alleges that his termination was motivated by his disability and that he was terminated in retaliation for his request for accommodations. *Id.* ¶ 13.

Plaintiff asserts five causes of action against Defendant and Does 1-50: discrimination in violation of the Fair Employment and Housing Act ("FEHA"); retaliation for engaging in protected activity in violation of FEHA; failure to prevent discrimination and retaliation in violation of FEHA; failure to provide reasonable accommodations in violation of FEHA; and failure to engage in a good faith interactive process in violation of FEHA. *Id.* ¶¶ 15-54.

Plaintiff originally filed suit in the Superior Court of California, County of Orange, on June 9, 2026. Notice of Removal ("Not.") (Dkt. 1) ¶ 1. Plaintiff served Defendant on June 18, 2026. *Id.* ¶ 3. On July 20, 2026, Defendant removed the action to this Court, asserting diversity jurisdiction. *Id.* ¶¶ 7, 25.

## II. Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the

federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* In that situation, a plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus*, 980 F.2d at 567). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699.

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id*. Summary judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

## III. Discussion

Defendant argues that this Court has diversity jurisdiction in this action. Not. ¶ 7. The Court disagrees.

Defendant has not met its burden to show that the amount in controversy requirement is satisfied. The Court considers lost wages in the period from termination until removal. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court *may grant* on that complaint *if the plaintiff is victorious*") (emphasis added). Here, it appears that Plaintiff was terminated on April 17, 2026, Not. ¶ 24, and the case was removed on July 20, 2026, *see generally* Not. At the time of Plaintiff's termination, he was paid $40.18 per hour, or $1,526.84.00 per week for the 38-hour work week that Plaintiff worked. *Id.* ¶ 24. Accordingly, Plaintiff's economic damages at the time of removal total to $20,490.19[1]. *Id.* Plaintiff's lost wages of $20,490.19 are therefore far below the required $75,000 minimum.

Additionally, to reach the jurisdictional threshold, Defendant asks the Court to include the include emotional distress damages, punitive damages, and attorneys' fees. *Id.* ¶¶ 26-33. However, this Court does not include these types of speculative damages or fees when calculating the amount in controversy. *See Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1011 (9th Cir. 2010) (recognizing that front pay is speculative); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Because Defendant has not satisfied their burden to show that more than $75,000 is at issue in this case, the Court lacks diversity jurisdiction.

[1] $1,526.84/week x 13.42 weeks (13 weeks and 3 days) = $20,490.19.

The Court's decision not to include speculative awards in the amount in controversy is reinforced by the fact that Congress has not raised the amount in controversy since 1996—nearly three decades ago.[2] *See* The Federal Courts Improvement Act of 1996, 110 Stat. 3850. Since then, the inflation rate is nearly 100% (*i.e.*, prices have almost doubled). Thus, adjusted for inflation, the amount in controversy should be around $150,000. Stated conversely, a case worth $75,000 in 1996 is worth only $37,500 in today's dollars. Because inflation has plainly decreased the "real" value of the amount in controversy, more and more cases are able to meet the jurisdictional threshold and can be brought in federal court. As federal diversity jurisdiction expands, state court jurisdiction to decide purely state law issues and develop state law correspondingly decreases. Thus, the federal jurisdictional creep is incompatible with the most basic principles of federalism.

Federalism is not the only loser in Congress's failure to increase the amount in controversy. When a case is improperly removed, as happened here, ultimate resolution is delayed. Moreover, if a court does not quickly remand a case sua sponte, a plaintiff may move to remand. Because cases subject to motion to remand are typically small dollar cases, this increased motion work can quickly cause attorneys' fees to outrun any potential recovery and places an immense burden on a plaintiff's lawyer working on contingency. In this respect, the current low jurisdictional threshold reduces access to justice. Therefore, the Court respectfully encourages Congress to reconsider the amount in controversy minimum.

Furthermore, it appears that Defendants' removal may be untimely. There are 32 days between June 18, 2026, when Defendant was served, and July 20, 2026, when Defendant removed the action to this Court. This is beyond the 30-day timeline for removal. *See* 28 U.S.C. § 1446(b). While the Court does not remand on this basis, it serves as an alternate reason for why this matter should proceed in state court.

## IV. Disposition

For the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of Orange County. The Clerk shall serve this minute order on the parties.



[2] For reference, in 1996, the minimum wage was $4.75 per hour, and only 16% of Americans had cell phones.